Richardson, J.
delivered the opinion of the Court.
This suit, brought by the mother of Peter C. Coggeshall, for a seeming filial provision, made on his death bed, for her support, must still stand on the footing, and within this prim ciple of law — that all executory contracts to give in future, if exclusively gratuitous, i. e. without some valuable consideration, over and above the mere moral duty of the donor, are not binding in law, unless such valuable consideration be both alleged in the pleadings and proved at the trial.
It was for want of both such allegation and the proof of such consideration, that the former verdict for Mrs. Cogge-shall was set aside. The judicial decision was simply this : That the undertaking of Peter C. Coggeshall to pay to Rebecca Coggeshall, was not a note of hand, but a contract at common law; and therefore a valuable consideration must be alleged, and also proved. — Sto. 43, and the cases there quoted.
This brief exposition of the case presents the main grounds *58 of the defendant’s appeal — i. e. upon its merits: namely, that the requisite consideration, which alone can justify the verdict, was not proved. Was it not proved sufficiently, at least, to support the verdict? is the inquiry for the Court. The first source of such proof is intrinsic to the paper: “ I promise to pay, for value received, to Rebecca Coggeshall, one thousand five hundred and sixty dollars, in annual instalments of two hundred dollars,” &c. The words “for value received,” as used in notes of hand, are generally a mere habitual formula, and of no consequence; because notes of hand, like bonds, do, of themselves, imply a consideration. All such are valid contracts per se.
But in contracts not under seal, other than such notes, such a habitual formula of “ for value received ” is, to say the least, by no means so well recognized as merely a matter of course; and the present undertaking was not a note of hand.
There are many contracts in which those very words would be conclusive of a full and just consideration. But be it admitted, that the force of such a distinction between the same words in different contracts, may be reasonably impaired by the probable fact, that P. C. Coggeshall, at the time, thought he was signing a mere note of hand. It was treated as such down to the first appeal, Dec. ’46. But, take it as you will, the practical application and force of such apparent acknowledgment arising from the words “ value received,” was for the jury to decide — not for us.
Take another mark of true value received, inherent to the contract. P. C. Coggeshall was making his supposed gratuitous support for his mother, by annual instalments of $200. How came he then to limit his liability to $1560 ? . If he had not actually received that very amount, would not his gratuitous limit, as a thing of course, have been $1600, or any -other sum that could be divided equally by $200?— Could he have meant to stint his mother, by $40, in the last instalment; or what did he mean by so trifling a curtailment as $40? Did he not, then, mean to say precisely what his i words may import, to wit: I háve received value to the extent of $1560, for my mother; wherefore I promise to pay her $200 a year, as long as she lives, provided the aggregate shall not exceed the $1560, so received for her. Now let us assume’ this possible meaning of the words “ for value received,” as used in this particular contract, and do we not then perceive some sense in the statement of the bond of $6000, made in the handwriting of the foreman of the jury, in 1825, which possibly got into the hands of P. C. Cogge-shall ? Do we not see that this balance of $1648 68 may *59 have been received by P. C. Coggeshall ? This would account reasonably for the words “ value received,” to wit, by the receipt of that $1648 68: and then you have only to.deduct commissions for collecting the money, and you have, within the merest fraction, the very sum of $1560, for which he, P. C. Coggeshall, bound himself to pay his mother by in-stalments. Why then imagine a mere executory gratuity, in this case, in the face of the words “for value received”?
Now then, couple the intrinsic evidence of the contract with the foreman’s statement, and with the evidence of T. Williamson, and how can we conclude that there was not evidence of valuable consideration to support the verdict ?
Lastly, on the head of consideration — turn to the position, character, and circumstances of Mr. Coggeshall. Circumstances are often strongly in corroboration. When a man— a lawyer too — who had before executed his last will, leaving but. little estate — on his death bed, in the midst of his family and friends — instead of adding a codicil to his will, deliberately executes such a contract, and says “for value received,” it is difficult to conclude that he used those important words as a mere habitual formula.
I must infer that he was executing some family trust and confidence, known and confided to him, rather than giving so much charity out of his small estate, away from a wife and eight children. For myself, I must say that from the evidence of such facts, and their concurrence with the position of P. C. Coggeshall, and the paper itself, I am well satisfied with the verdict, independent of the force of moral views, on which I expresssed an opinion last Monday, in Comm’rs v. Gilbert.
The second ground of appeal presents this question: was John M. Scriven made a trustee for Rebecca Coggeshall, or is he only a stake-holder or agent to keep the paper and see to the performance? If trustee, his declarations ought to have been taken as evidence; but if a mere stake-holder, or agent, in fact, they were properly rejected by the Court.— By the writing P. C. Coggeshall promised to pay the money to Rebecca Coggeshall. “ But this note,” &c. he finally subjoins, “ is, during his life, to be kept by John M. Scriven, to perform the trust herein contained.” These words must be reconciled to the promise to pay to Rebecca Coggeshall, for value received.. She required no trustee; and in order to reconcile the two' clauses, may we not fairly conclude, in the words of the evidence, “ this note is to be kept by John M. Scriven,” i. e. as an agent for the heirs of P. C. Coggeshall, to whom the money, more or less, might eventually come, as *60 well as for Mrs. Rebecca Coggeshall, whose legal rights were instantly Tested by the letter of the contract, but who was absent.
We are of opinion that this is the rational construction.. — • The other construction would put the suit of Mrs. Coggeshall out of Court — to be brought by Mr. Scriven, the trustee: an event which, at this late day, could only be allowed upon the strictest legal right.
The last ground is upon the amount of the verdict Ought it to be for no more than the instalments due at the commencement of the action? If the amount of §51560, instead of being made payable by instalments annually, had been divided into as many special notes, instead of the instalments, each successive note would have spoken for itself; and, of course, none could have been recovered but the notes due at the issuing of the writ. But is not the contract before the Court plainly identical with the one I have supposed — i. e. if it had been so divided into different notes. I can perceive no difference. The meaning is the same, and the same law applies, of course.
It follows that upon this ground there must be a new trial, unless the plaintiff will remit from the verdict the amount of such instalments as became payable only after the commencement of the action, so as to reduce the verdict to the instal-ments due before — and it is so ordered.
Evans, J. Wardlaw, J. Frost, J. and Withers, J. concurred.